UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
HUI ZHANG ALTMAN,                                         :
                                                          :
                    Plaintiffs,                           :
                                                          :           06 CV 6319 (HB)
        - against -                                       :
                                                          :           **OPINION & ORDER**
NEW YORK CITY DEPARTMENT OF                               :
EDUCATION, MS. LYNCH, MR. KRUNG,                          :
MS. IROBUNDA and MR. CHERNIOFF,                           :
                                                          :
                    Defendants.                           :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

Plaintiff *pro se* Hui Zhang Altman ("Plaintiff" or "Altman") has brought this action against Defendant New York City Board of Education ("BOE") (sued herein and doing business as the "New York City Department of Education") and four individual defendants, David Kroun,[1] Claralee Irobunda, Steven Chernigoff,[2] and Olivia Ifill-Lynch (collectively, the "individual Defendants"). Plaintiff alleges that she was discriminated and retaliated against on the basis of her national origin, in violation of Title VII of the Civil Rights Act of 1964, see 42 U.S.C. §§ 2000e - 2000e-17 (2007), and age, in violation of the Age Discrimination in Employment Act ("ADEA"), see 29 U.S.C. §§ 621 – 634 (2007).[3]

Defendants now move for summary judgment to dismiss all of Plaintiff's claims.

Because genuine issues of material fact remain as to Plaintiff's claims on the basis of her national origin, Defendant's motion for summary judgment on Plaintiff's Title VII claims is DENIED. Because Plaintiff does not state facts sufficient to support a claim for age discrimination or retaliation, Defendant's motion for summary judgment on Plaintiff's ADEA claims is GRANTED.

## I. BACKGROUND

---

[1] "David Kroun" is the correct spelling of the putative Defendant sued as "Mr. Krung."

[2] "Steven Chernigoff" is the correct spelling of the putative Defendant sued as "Mr. Chernioff."

[3] On March 23, 2007, I dismissed Plaintiff's claims against the individual Defendants in their individual capacities. See Altman v. N.Y. City Dep't of Educ., 2007 U.S. Dist. LEXIS 20418, at *5-7 (S.D.N.Y. Mar. 23, 2007).

A. Plaintiff's Employment

Plaintiff *pro se* Hui Zhang Altman is a 48-year old woman of Chinese national origin. See Plaintiff's Complaint ("Pl. Compl.") at 3, 5. Plaintiff began her employment as a teacher in 1995, and was assigned to Morris High School in September 1998. Defendant's Statement of Undisputed Facts ("Def. Facts") ¶ 2-3. From 1998 through 2001, Plaintiff taught Chinese and ESL classes at Morris. After the 2000-01 school year, it appears Morris cancelled its Chinese program, and Plaintiff taught English and continued to teach ESL classes. Def. Facts ¶ 4-6.

Several observation reports rated Plaintiff's performance as "satisfactory," but raised questions about her performance. On December 16, 2002, Assistant Principal Steven Chernigoff observed Plaintiff's class, and on January 20, 2003, rated Plaintiff "unsatisfactory."[4] See Def. Facts, Ex. M. Before Chernigoff submitted his official rating, and on January 3, 2003, Plaintiff wrote a letter to then-Principal Jose Ruiz in which she complained about Mr. Chernigoff's evaluation and alleged that "for [Mr. Chernigoff] to do this to me, he has to have so much hatred and prejudice against me in his heart."[5] Plaintiff's Opposition [to] Motion for Summary Judgment ("Pl. Opp."), Ex. 6. Plaintiff's letter did not specifically raise concerns of discrimination based on her national origin, but read, "[Chernigoff] asked me why I changed my license from English to ESL. I wondered if this matter has anything to do with his observation?"[6] Id.

In the following months, Plaintiff received ratings of "satisfactory" or "minimally satisfactory" from Ruiz and Chernigoff. Def. Facts ¶ 21-29. On January 13, 2004, as part of his "minimally satisfactory" evaluation, Chernigoff noted that, at variance with school policy, students were eating lunch in teachers' (including Plaintiff's) classrooms.

---

[4] Plaintiff also alleges that at some point in time, apparently between 2001 and 2004, Mr. Chernigoff prevented her and Ms. Xu, another Chinese teacher, from reading the listening passage of the "Regents Exam" to the students. See generally Chernigoff Depo. at 25-27. Chernigoff avers that Altman was allowed to read the listening passage at any point she sought to, and that Altman and Ms. Xu voluntarily chose not to read it on one occasion. Id. at 26. It is unclear whether Plaintiff bases her discrimination or retaliation claims upon this incident as well.

[5] Plaintiff also wrote to Ruiz that she "relat[ed] Mr. Chernigoff's face to Napoleon… one of the main characters in the book… 'Animal Farm'." Pl. Opp., Ex. 6.

[6] Defendant avers that although Plaintiff completed her probationary period as an English teacher in 2000, because Plaintiff did not obtain a permanent state certification in English, Plaintiff's license to teach English expired in 2002, and Plaintiff was appointed as a new probationary teacher under an ESL license in 2002. Def. Facts 5-6. Plaintiff disputes that she was a probationary teacher when she was fired. Pl. Opp. at 1.

Def. Facts, Ex. Q.  Plaintiff avers that she complained to Principal Claralee Irobunda and Superintendent Olivia Ifill-Lynch about students eating lunch in her classroom around this time, although it is unclear if she did so in writing.[7]  Pl. Opp. ¶ 9.

On March 10, 2004, Chernigoff observed Plaintiff's class, and again subsequently rated Plaintiff "unsatisfactory."  Def. Facts, Ex. T.  Among the concerns Chernigoff cited was that "[a]s a teacher of language and literature, you must model appropriate language usage for your students. The… hand-out sheet was littered with incorrect spellings, inconsistencies, and grammatical errors…"  Id.  Chernigoff also criticized Plaintiff's "Web Quest" lesson, noting that although "the topic is immigration," that topic bore "little connection" to the book Plaintiff was assigned to teach.  Id.  Plaintiff, when she signed the evaluation form, wrote that "[t]his observation evaluation is… Chernigoff's personal feelings… [He] totally ignores the truth/facts…"  Id.

Plaintiff and her union representative subsequently met with Mr. Chernigoff and Principal Claralee Irobunda on April 15, 2004 to discuss a "helping plan" for Plaintiff, including future observations and feedback.  Def. Facts, Ex. X.

On April 30, 2004, Principal Claralee Irobunda observed Plaintiff's class and subsequently rated her "unsatisfactory."  Def. Facts, Ex. Z.  Among her concerns, Irobunda stated that Plaintiff "did not model language appropriately," and mispronounced the words "ornament," "foamy," "wreckage," and "hasten."  Id.  When deposed regarding Plaintiff's alleged mispronunciation and asked, "Is it because the Plaintiff has [an] accent?" Irobunda stated, "I was there…. [T]he students never understood what the words were…. They were just mispronounced."  Deposition of Claralee Irobunda ("Irobunda Depo."), at 31-32.  Plaintiff, when she signed her evaluation form, wrote, "This observation is… unfair. Grievance is filed."  Def. Facts, Ex. Z.  (It is unclear if a grievance was, in fact, filed at that time.)

On May 24, 2004, Principal Irobunda again observed Plaintiff's class and again rated her unsatisfactory.  Def. Facts, Ex. CC.  Again, Irobunda cited Plaintiff's failure to "model properly" and mistakes in "writing and speech."  Id.

---

[7] It also appears that on October 3, 2003, Ms. Altman sent a letter of complaint to Principal Claralee Irobunda, in which Ms. Altman alleged that a colleague called her a "dirty Chinese."  Irobunda Depo., at 49-50.  Irobunda avers that she conducted an investigation, and, it appears, did not take action.  Id. at 52-53.  This letter is not before the Court on this motion.

3

On June 15, 2004, after he observed Plaintiff's class, Assistant to the Superintendent David Kroun rated Plaintiff unsatisfactory. Ex. DD. Among 24 concerns he stated, one was "[u]sing poor grammar and idiomatic English." Id. Kroun recommended to the Superintendent that Altman be denied completion of probation. Id. Superintendent Olivia Ifill-Lynch signed the letter and approved Kroun's recommendation. Altman signed the letter, stating, "I am signing this under protest." Id.

On June 17, 2004, Superintendent Ifill-Lynch wrote Plaintiff. Def. Facts, Ex. FF. Ifill-Lynch denied Plaintiff her completion of probation, and informed Plaintiff that her employment would terminate August 20, 2004. Id.

Plaintiff appealed her denial to the Chancellor's Committee. Ex. KK. The Chancellor's Committee, stating that "massive assistance was afforded" to Plaintiff, denied Plaintiff's appeal. Ex. KK. David Moskowitz, who Plaintiff characterizes as a union representative on the Committee, filed a dissenting Minority Report. Pl. Opp., Ex. 15. The Minority Report noted that, "[w]hile the administration rated her unsatisfactory in '[v]oice, speech, and use of English,' one must assume she used the same voice and language in her previous satisfactory rated nine years." Id.[8]

Plaintiff also filed a complaint with the New York State Division of Human Rights on December 15, 2004. The Division of Human Rights dismissed her complaint on April 20, 2006. Def. Facts, Ex. MM. The EEOC subsequently mailed Plaintiff a "right-to-sue" letter on June 7, 2006.

B. Plaintiff's Complaint

On July 12, 2006, Plaintiff filed this complaint. Plaintiff first alleges that she was discriminated and retaliated against on the basis of her national origin, in violation of Title VII of the Civil Rights Act of 1964. Plaintiff stated, inter alia, "[t]hey fired me by blaming me not to be able to pronounce English correctly because I have a Chinese accent." Pl. Compl. at 6.

---

[8] Plaintiff subsequently filed an Article 78 petition challenging the Committee's denial of her appeal. On November 2, 2006, New York State Supreme Court Justice Paul Feinman denied Plaintiff's Article 78 petition. See Altman v. New York City Dept. of Educ., 2006 N.Y. Misc. LEXIS 3676 (N.Y. Sup. Ct. Nov. 2, 2006).

Plaintiff secondarily alleged that she was discriminated and retaliated against and age, in violation of the ADEA.[9]  Plaintiff stated, "I also believe that they fired me because of my age… The New York City Board of Education attempts to hire young teachers.  I believe that the [union] filed a class suit against [the] NYC Department of Education for age discrimination."  Pl. Compl. at 6.

Defendants subsequently filed this motion for summary judgment on all of Plaintiff's claims.[10]

## II.  STANDARD OF REVIEW

A court will not grant a motion for summary judgment unless the movant establishes that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250 (1986).  The party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but  . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  A disputed issue of material fact alone is insufficient to deny a motion for summary judgment, the disputed issue must be "material to the outcome of the litigation," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), and must be backed by evidence that would allow "a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In ruling on a summary judgment motion, the Court resolves all

---

[9] On March 23, 2007, I dismissed Plaintiff's claims against the individual Defendants in their individual capacities.  See Altman v. N.Y. City Dep't of Educ., 2007 U.S. Dist. LEXIS 20418, at *5-7 (S.D.N.Y. Mar. 23, 2007).

[10] On April 4, 2007, after Defendants submitted their reply, Plaintiff submitted additional material in support of her opposition to Defendants' summary judgment motion, e.g., self-transcribed transcripts of her depositions of Mr. Chernigoff, Ms. Irobunda, and Mr. Kroun.  Defendants, on April 9, 2007, by letter, moved to strike this additional material as an improper "sur-reply" and as inaccurate.

"[A] pro se litigant is entitled to have her submissions to the court construed liberally.  This liberality extends to the Court's interpretation and application of procedural requirements."  Jones v. Commerce Bank, N.A., 2007 U.S. Dist. LEXIS 15343, at *9 (S.D.N.Y. 2007) (internal citations omitted).  Additionally, the Corporation Counsel has a responsibility to extend professional courtesy to pro se litigants so the case can be tried on its ultimate merits.  Defendants' motion to strike strikes this Court as rather petty, as Plaintiff only self-transcribed her depositions after Defendants refused to provide her with a courtesy copy of the transcription (at least, until this Court ordered the Corporation Counsel to do so, see Altman v. N.Y. City Dep't of Educ., 2007 U.S. Dist. LEXIS 20418, at *8).

Defendants' motion to strike is accordingly denied.  I will consider Plaintiff's submission on this motion and give it whatever weight it is entitled to.

ambiguities and draws all inferences against the moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (*per curiam*); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). Further, since the plaintiff is the non-movant and proceeding *pro se*, I must construe her papers liberally and "interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (internal citation omitted).

"In employment discrimination cases where it is necessary to explore an employer's intent and motivation, summary judgment may not be appropriate." See generally Bhaduri v. Summit Sec. Servs., 2006 U.S. Dist. LEXIS 79830, at *11-12 (S.D.N.Y. 2006), citing Patrick v. LeFevre, 745 F.2d 153, 159 (2d Cir. 1984). Consequently, affidavits and deposition testimony must be scrutinized for circumstantial evidence, which if believed, would support a finding of discrimination. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

### III.   DISCUSSION

With respect to Title VII and ADEA, the elements to prove a *prima facie* case are the same. See Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003). The plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discriminatory intent. See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Sanders v. New York City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004). Thereafter, the burden of going forward shifts to the employer to "articulate some legitimate, non-discriminatory reason for the employer's rejection." McDonnell Douglas, 411 U.S. 792, 802. If the employer is able to do so, then plaintiff must show that the stated reason is pretextual. Id.

A.   Plaintiff's Discrimination Claim Based on National Origin

Plaintiff's discrimination claim based on her Chinese national origin passes the first three tests and turns on the fourth McDonnell Douglas factor – i.e., whether she can show that the adverse employment occurred under circumstances that give rise to an

inference of discriminatory intent.[11]  Plaintiff, succinctly, alleges that "[t]hey fired me [for] not to be able to pronounce English correctly because I have a Chinese accent."  Pl. Compl. at 6.

"[N]ational origin discrimination includes 'the denial of employment opportunity because… an individual has the… linguistic characteristics of a national origin group.'"  Rivera v. Baccarat, Inc., 10 F. Supp. 2d 318, 324 (S.D.N.Y. 1998), citing 29 C.F.R. § 1606.1 (EEOC regulations).  That said, "an adverse employment decision may be predicated upon an individual's accent when – but only when – it interferes materially with job performance."  Meng v. Ipanema Shoe Corp., 73 F. Supp. 2d 392, 399 (S.D.N.Y. 1999) (Scheindlin, J.), quoting Fragante v. City and County of Honolulu, 888 F.2d 591, 596-97 (9th Cir. 1989).  "There is nothing improper about an employer making an honest assessment of the oral communications skills of a candidate for a job when such skills are reasonably related to job performance."  Id.

Thus, even where plaintiffs allege discrimination based on a foreign accent, some courts have granted summary judgment to Defendants if their stated reason for termination is a plaintiff's "communications skills."  See Meng v. Ipanema Shoe Corp., 73 F. Supp. 2d 392, 399 (Court granted summary judgment to defendant that terminated Chinese customer service representative based on fact that "some of her customers had trouble understanding her"); Thelusma v. New York City Bd. of Educ., 2006 U.S. Dist. LEXIS 64855, at *8-9 (E.D.N.Y. 2006) (Court granted summary judgment to Defendant that terminated Haitian public school teacher even though Defendant recommended that Plaintiff take "accent reduction classes").

The key inquiry is whether the "comments about a person's accent may be probative of discriminatory intent."  See Thelusma v. New York City Bd. of Educ., 2006 U.S. Dist. LEXIS 64855, at *6, citing Rivera v. Baccarat, Inc., 10 F. Supp. 2d 318, 324 ("Accent and national origin are obviously inextricably intertwined in many cases"); see also Fragante v. City and County of Honolulu, 888 F.2d 591, 596.  Here, some of Defendants' stated reasons for Plaintiff's termination are her "modeling" of language, pronunciation, and "idiomatic English."  Defendants appear to have made no facially

---

[11] Defendants do not dispute that Plaintiff is a member of a protected class (i.e., based on her Chinese national origin), that she is qualified for the job, or that she suffered an adverse employment action (i.e., she was terminated).

7

discriminatory remarks about Plaintiff. Further, Plaintiff is an English and ESL teacher, and her usage of proper English understandably bears some relationship to her job performance. Still, keeping in mind that summary judgment may not be appropriate in employment discrimination cases where intent is at issue, and drawing all circumstantial inferences in the favor of the *pro se* Plaintiff, I decline to grant summary judgment on this claim.

B.  Plaintiff's Retaliation Claim Based on National Origin

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must establish: 1) participation in a protected activity, 2) knowledge by plaintiff's employer of the protected activity, 3) that plaintiff suffered a "materially adverse" action; and 4) that there is a causal connection between the protected activity and the materially adverse action. See Thomas v. iStar Fin., Inc., 438 F. Supp. 2d 348, 364 (S.D.N.Y. 2006), citing Burlington Northern & Santa Fe Ry. v. White, 126 S. Ct. 2405 (2006).

General allegations of harassment unrelated to race are not 'protected activity' under Title VII. See Thomas v. iStar Fin., Inc., 438 F. Supp. 2d 348, 365. Here, Plaintiff sent a letter to her principal, in which she alleged that the Assistant Principal, Mr. Chernigoff, after he evaluated her and criticized her for her lack of "appropriate language usage," had done so due to the "hatred and prejudice against [her] in his heart," and wondered, "He asked me why I changed my license from English to ESL. I wondered if this matter has anything to do with his observation?"[12] Again, keeping in mind that summary judgment may not be appropriate in employment discrimination cases where intent is at issue, and drawing all favorable circumstantial inferences in the favor of the *pro se* Plaintiff, I decline to grant summary judgment to Defendant on Plaintiff's retaliation claim based on national origin.[13]

---

[12] As noted above, it appears that Plaintiff previously made an official complaint of racial discrimination against another colleague, but evidence of that complaint is not before the Court on this motion.

[13] Defendant also avers that Plaintiff does not state a sufficient "causal connection" between the protected activity and the allegedly retaliatory action. The Second Circuit has not drawn a "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 554 (2d Cir. 2001). Because issues of fact exist, including issues of fact as to which alleged protected activity Plaintiff bases her claims on, and which action Plaintiff characterizes as the "retaliatory action," in an abundance of caution, I decline to grant summary judgment on this ground as well.

C.  Plaintiff's Claims Based on Age Discrimination

Claims under the ADEA are governed by the same three-step burden-shifting framework set forth in McDonnell Douglas.  See, e.g., D'Cunha v. Genovese/Eckerd Corp., 2007 U.S. App. LEXIS 4261 (2d Cir. Feb. 27, 2007).

With regard to age, Plaintiff has not made the requisite showing that the adverse action occurred under circumstances giving rise to an inference of age discrimination.  Indeed, the only evidence Plaintiff puts forth of age discrimination are the conclusory allegations in her complaint – i.e., that "the New York City Board of Education attempts to hire young teachers," and that the teachers' union filed a class action against the Department of Education for age discrimination.  Plaintiff puts forth no comments or actions by any of her supervisors relating to her age, such that might give rise to an inference of age discrimination.  "[P]urely conclusory allegations of discrimination, absent any concrete particulars," are insufficient to survive a summary judgment motion. Khan v. Hip Centralized Lab. Servs., 2007 U.S. Dist. LEXIS 23721, at *28 (E.D.N.Y. 2007), citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985); see also Burroughs v. Chase Manhattan Bank, N.A., 2005 U.S. Dist. LEXIS 3229 (S.D.N.Y. 2005). Defendants' motion for summary judgment to dismiss Plaintiff's ADEA claims is granted.

## IV.  CONCLUSION

Because genuine issues of material fact remain as to Plaintiff's Title VII claims for discrimination and retaliation based on her national origin, Defendant's motion for summary judgment on those Title VII claims is DENIED.  Because Plaintiff does not state facts sufficient to support her ADEA claims for discrimination or retaliation based on her age, Defendant's motion for summary judgment on those ADEA claims is GRANTED.

Trial will commence on Plaintiff's remaining Title VII claims on Tuesday, June 12, 2007. The Clerk of the Court is directed to close this motion and remove it from my docket.

**SO ORDERED.**

**May ___, 2007**
**New York, New York**

_____
U.S.D.J.

10